311 A.2d 45.

STATE *vs.* RONALD L. SOROKA.

NOVEMBER 9, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Ronald L. Soroka was adjudged guilty by a justice of the Superior Court sitting without a jury on an indictment which charged him with unlawfully possessing a narcotic drug in violation of G. L. 1956 (1968 Reenactment) §21-28-31. He is now here on a bill of exceptions which raises fourth amendment questions concerning a warrantless search of his person incident to an arrest. Because we find that the search was constitutionally impermissible, we reverse.

The facts relevant to the challenged search and seizure are not in dispute, and may be briefly stated. At about 6 p.m. on February 27, 1969, an unidentified person telephoned the South Kingstown police station and told William Aukerman, the police officer then on desk duty, that a tall, white male hitchhiker, who was dressed in a khaki jacket, dungarees and a ski-type toque, had just alighted from his automobile and could be found hitchhiking on Tower Hill Road at the intersection of Routes 1 and 138.

He further advised that he believed the described person possessed marijuana and possibly other drugs.

Shortly thereafter Sergeant H. Ronald Hawksley, also a South Kingstown police officer and then on patrol duty, called the station house to inquire whether there were any messages for him. Officer Aukerman repeated the substance of his conversation with the anonymous informer. As chance would have it the sergeant was telephoning from a restaurant which was only about 200 feet from the place where the anonymous caller had said the hitchhiker would be found, and when he looked out the window he saw a hitchhiker standing at the indicated location. He promptly left the restaurant, approached the hitchhiker, recognized him as the person described, placed him under arrest and then proceeded with a pat down which started under the suspect's armpits and worked its way down to the ankles. In the process he felt a bulky object in the hitchhiker's right jacket pocket, and after completing the pat down, he explored that pocket and removed a folded glassine envelope which was approximately 5½ inches by 2½ inches by one-half inch in size and contained about one-half ounce of a substance which was later identified as cannabis.

Thereupon the hitchhiker was advised of his rights and taken to the South Kingstown police headquarters where he was charged with unlawful possession of a narcotic drug, to wit, cannabis. He was subsequently admitted to bail and after indictment, trial and conviction, received a deferred sentence. At appropriate stages during the Superior Court proceedings, he challenged the constitutionality of the search that uncovered the cannabis. He is here on exceptions to the trial justice's refusal to suppress the cannabis and to its admission into evidence.

Basically, the state's theory of the case is that the search was permissible because it was incident to a lawful arrest

for a narcotics offense. Whether it was in fact lawful depended, of course, upon the existence of probable cause to arrest, that is, upon whether the facts and circumstances were sufficient, at the moment of the arrest, to warrant a man of reasonable caution in believing that defendant had committed or was committing the offense for which he was being arrested, *viz.*, a violation of the narcotics law. *Beck* v. *Ohio*, 379 U. S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); *Brinegar* v. *United States*, 338 U. S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, 1890 (1949); *Carroll* v. *United States*, 267 U. S. 132. 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925) ("reasonably trustworthy information").

Here the state purports to find the requisite probable cause for the arrest in the anonymous tip plus the corroboration it received from Sergeant Hawksley's observation that a person who precisely fitted the tipster's description as to appearance, attire and activity had been seen at the time when and at the place where the informer had advised that such a person would be found.[1]

The cases[2] upon which the state relies, while of little or no assistance to its position, basically hinge on the mean-

---

[1]In *State* v. *Duffy*, 112 R. I. 276, 281, 308 A.2d 796, 799 (1973), we said that an arresting officer in the field could rely on departmental knowledge which came to him through official channels. *See also United States* v. *Ventresca*, 380 U. S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965). But, "* * * an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whitely* v. *Warden*, 401 U. S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971). Thus, the information supplied must still be "reasonably trustworthy" and meet the tests of *Aguilar* v. *Texas*, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), if it is to serve as justification for a warrantless arrest. *Remers* v. *Superior Court*, 2 Cal.3d 659, 666-67, 470 P.2d 11, 15, 87 Cal.Rptr. 202, 206-07 (1970); *see State* v. *Wilson*, 110 R. I. 740, 743 n.2, 297 A.2d 645, 647 n.2 (1972).

[2]*State* v. *Roach*, 106 R. I. 280, 259 A.2d 119 (1969); *State* v. *Almeida*, 105 R. I. 687, 255 A.2d 151 (1969); *Cioci* v. *Santos*, 99 R. I. 308, 207 A.2d 300 (1965).

ing of *Draper* v. *United States,* 358 U. S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). This seminal case delineates the guidelines for determining when and in what circumstances advice received from an unidentified informer may be the kind of "reasonably trustworthy information" upon which an officer may rely for the probable cause required to validate a warrantless arrest.

*Draper's* guidelines, however, do not accommodate the facts of this case. To be sure, both cases involved an informer who, in addition to advising that a suspect would have narcotics in his possession, also furnished accurate information as to that suspect's appearance and where and when he would be found. But the similarities between the two end there. In *Draper* the information came from a special employee of the Bureau of Narcotics who had previously furnished reliable information regarding narcotics violations; in this case it came from an unidentified source who had not established his reliability and who, although he expressed a "belief" that defendant possessed narcotics, did not furnish the police with any basis, support or underlying reason for that "belief."

That kind of naked assertion, emanating as it did from an unidentified and unproven source, could not reasonably have justified the South Kingstown police in concluding that their unidentified informant had a reasonable opportunity to acquire the personal knowledge he purported to possess. Neither can they point to any "specific and articulable facts" to warrant the intrusion. *Terry* v. *Ohio,* 392 U. S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). For aught they knew his reported "belief" was no more than a baseless suspicion or spiteful prank. Tested against constitutional standards it was not the kind of "reasonably trustworthy information" which would have provided a detached and neutral magistrate with the probable cause necessary for the issuance of a search warrant. *Recznik* v.

*City of Lorain,* 393 U. S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968); *Beck* v. *Ohio, supra; Aguilar* v. *Texas,* 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *State* v. *Roach,* 106 R. I. 280, 259 A.2d 119 (1969); *State* v. *LeBlanc,* 100 R. I. 523, 217 A.2d 471 (1966). Neither did it furnish Sergeant Hawksley with the probable cause which he required in order to arrest and to engage in a warrantless search. *Spinelli* v. *United States,* 393 U. S. 410, 417 n.5, 89 S.Ct. 584, 589 n.5, 21 L.Ed.2d 637, 644 n.5 (1969); *Beck* v. *Ohio, supra* at 96, 85 S.Ct. at 228, 13 L.Ed.2d at 147-48.

In sum, what was relayed to the arresting officer concerning defendant's appearance and where he would be found, while accurate, was insufficient as a basis for an arrest unless accompanied by "reasonably trustworthy information" placing him in criminal circumstances, and in that aspect the knowledge supplied the arresting officer was deficient.

Perhaps because it recognizes the weaknesses in its contention that there was probable cause to arrest for a narcotics violation, the state argues alternatively that Sergeant Hawksley observed defendant illegally hitchhiking,[3]

---

[3]General Laws 1956 (1968 Reenactment) §24-10-17 provides that:

"Any person who endeavors by words, gestures or otherwise to beg, invite or secure transportation in any motor vehicle on any freeway within the state, except in the case of a bona fide emergency or in the case of sickness, shall be guilty of a misdemeanor and shall be punished by a fine of not more than fifteen dollars ($15.00).

"Any person who endeavors to solicit a ride in a motor vehicle in the manner described in this section on the travelled portion of any other public highway in this state shall be guilty of a misdemeanor and shall be punished by a fine of not more than fifteen dollars ($15.00)."

and arrested him because of that violation. On the assumption that this is so and that the arrest was not merely a pretext for the search,[4] the issues narrow to whether a custodial arrest[5] for a minor misdemeanor subjects the arrestee, *ipso facto,* to an on-the-scene[6] search of his person and, if so, what is its permissible scope.

There is no dearth of authority on these questions, and most of it is to the effect that a custodial arrest for a minor offense which proves itself does not, absent special circumstances, permit a full on-the-scene search of the arrestee's person.[7] Our acceptance of that view[8] has been

---

[4]If defendant's arrest for a hitchhiking violation were in reality no more than an excuse for the police to search his person for narcotics, we would be faced with a "pretext arrest" issue which some courts have resolved by holding that the search is a sham and therefore unreasonable. *Amador-Gonzalez* v. *United States,* 391 F.2d 308 (5th Cir. 1968); *United States* v. *Harris,* 321 F.2d 739 (6th Cir. 1963); *Taglavore* v. *United States,* 291 F.2d 262 (9th Cir. 1961).

[5]For our purposes a custodial or custody arrest is one where the arresting officer, after apprehending the offender, takes him to the station house for booking. It is to be distinguished from an arrest where, under authority of G. L. 1956 (1969 Reenactment) §12-7-11, as amended, a peace officer arrests for a misdemeanor and. instead of taking the arrestee to the station house, issues a summons which directs the arrestee to appear in court at a fixed time to answer to a complaint charging him with the offense for which he was arrested.

[6]We distinguish between an on-the-scene search at the time and place of the arrest, and one subsequently made at the station house.

[7]A sampling of those authorities includes: *United States* v. *Robinson,* 471 F.2d 1082 (D.C. Cir. 1972); *United States* v. *Davis,* 441 F.2d 28 (9th Cir. 1971); *People* v. *Lawler,* 9 Cal.3d 156, 507 P.2d 621, 107 Cal. Rptr. 13 (1973); *People* v. *Superior Court,* 7 Cal. 3d 186, 496 P.2d 1205, 101 Cal. Rptr. 837 (1972); *Gilchrist* v. *United States,* 300 A.2d 453 (D.C. 1973); *People* v. *Marsh,* 20 N.Y.2d 98, 228 N.E.2d 783, 281 N.Y.S.2d 789 (1967); Baker & Khourie, *Improbable Cause—The Poisonous Fruits of a Search After Arrest for a Traffic Violation,* 25 Okla. L. Rev. 54 (1972). *Contra, United States* v. *Simmons,* 302 A.2d 728 (D.C. 1973); *State* v. *Gustafson,* 258 So.2d 1 (Fla. 1972); *State* v. *Campbell,* 53 N. J. 230, 250 A.2d 1 (1969).

[8]*State* v. *Giragosian,* 107 R. I. 657, 270 A.2d 921 (1970), does not compel a contrary conclusion. There the defendant was searched at the sta-

influenced particularly by the plurality opinion in *United States* v. *Robinson,* 471 F.2d 1082 (D.C. Cir. 1972) which contains a broad exposition of the problems involved as well as a compendium of the relevant authorities.[9]

We start with the generally recognized concept that the basis for the exception to the warrant requirement with respect to a search incident to a valid arrest is that the arresting officer has reason "to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession." *Cupp* v. *Murphy,* 412 U. S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed. 2d 900, 905 (1973).

Out of that recognition has come the established principle that a warrantless search of the person incident to an arrest is valid only if it has as its legitimate objectives "(1) seizure of fruits, instrumentalities and other evidence of the crime for which the arrest is made in order to prevent its destruction or concealment; [or] (2) removal of

---

tion house following his arrest for a traffic offense. During the search objects were seized which tied the defendant to an illegal entry of a dwelling for which offense he was indicted, tried and convicted. At the trial the seized evidence was admitted, but the question of the permissible scope of the search was not raised and the defendant conceded that a full general search of his person was permissible as an incident to a lawful arrest. *Id.* at 663-64, 270 A.2d at 925.

[9]*Robinson,* as well as most of the other cases on the question, has arisen in the context of arrests for routine traffic violations. The principles enunciated, however, are equally apposite to the comparable minor misdemeanors. *People* v. *Lawler, supra* note 7. at 161-62, 507 P.2d at 624, 107 Cal.Rptr. at 16 (1973) (arrest of hitchhiker); *see Commonwealth* v. *Freeman,* 222 Pa. Super. 178, 293 A.2d 84 (1972). *See also* the American Law Institute, *A Model Code of Pre-Arraignment Procedure* §SS 230.2 at 53 (Official Draft No. 1) (1972), which, after thoroughly examining the law of search and seizure, concludes that a police officer may not conduct a full search of an individual arrested for *"a traffic offense or other misdemeanor,* the elements and circumstances of which involve no unlawful possession or violent. or intentionally or recklessly dangerous, conduct * * *." (emphasis added)

any weapons that the arrestee might seek to use to resist arrest or effect his escape." *United States* v. *Robinson, supra* at 1093 (footnote omitted). *See, e.g., Chimel* v. *California,* 395 U. S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); *Katz* v. *United States,* 389 U. S. 347, 357-58 n. 20, 88 S.Ct. 507, 514-15 n. 20, 19 L.Ed.2d 576, 585-86 n. 20 (1967); *Preston* v. *United States,* 376 U. S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964).

Here, the state claims that the crime for which the arrest was made was hitchhiking. That, however, is an offense which proves itself, and the search which followed defendant's arrest for that violation cannot possibly be justified on the ground that it either was reasonably intended or could logically have been contemplated as likely to produce something which would assist in the prosecution of the offense for the arrest which was made.

Having eliminated a possible seizure of fruits, instrumentalities or evidence as a legitimate objective, the search, to be upheld, would have to be justified as a protective search for weapons. That kind of search, Chief Judge Fuld of the New York Court of Appeals suggests, "is a special exception to the proscription against warrantless searches, and it should not be extended beyond its purpose of securing the safety of the officer and preventing an escape." *People* v. *Marsh,* 20 N.Y.2d 98, 101, 228 N.E.2d 783, 785-86, 281 N.Y.S.2d 789, 792 (1967).

In this case it cannot seriously be questioned that the arresting officer, prior to placing his prisoner in the squad car for transportation to the station house, was entitled to frisk his outer garments in order to ascertain whether he was armed. *Robinson, supra* at 1098. Certainly, a provident police officer having any reasonable regard for his own safety would have done no less.

Should an officer making a custodial arrest be allowed to go beyond the scope of such a limited protective frisk?

*Robinson* says *no* — and we agree — unless during the initial intrusion his suspicions were so reasonably aroused as to create a rational belief that failure to do so would have created an element of personal danger or frustrated the arrest. *Robinson, supra* at 1098-1100.

Here, Sergeant Hawksley, while frisking defendant's outer garments, felt a bulky object in defendant's jacket pocket which seemed to him to be "more or less like waxed paper." Nowhere does he hint that it bore any reasonable resemblance to a weapon, nor does he intimate a concern that it might be a threat to his safety or utilizable for escape. Indeed, the absence of any such evidence, and the inconclusiveness of what little other evidence there is on the subject, suggests that he entertained no belief whatsoever as to its identity and that his exploration of the jacket pocket was prompted by the expectation that it might contain the contraband which he had been advised defendant had in his possession. It might almost be said that he was engaging "in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States,* 333 U. S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948) (footnote omitted).

In the light of all the circumstances we are satisfied that the scope of the search was extended beyond the limits of the initial justifiable protective invasion, was unreasonable and that its fruits should therefore have been suppressed.

Our conclusions on the latter phase of this case have, as already indicated, been influenced in large measure by the logic of the *Robinson* case. Notwithstanding, we have limited our discussion of that case and its principles because it is being reviewed by the Supreme Court.[10]

---

[10]Certiorari was granted on March 19, 1973. *United States* v. *Robinson,* 410 U. S. 982, 93 S.Ct. 1500, 36 L.Ed.2d 177 (1973). The case was argued with *State* v. *Gustafson, supra* note 7. 410 U.S. 982, 93 S.Ct. 1494, 36 L.Ed. 2d 177 (1973).

The defendant's exceptions are sustained and the case is remitted to the Superior Court for further proceedings.

Petition to reargue denied.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Philip Weinstein,* Special Asst. Attorney General, for plaintiff.

*Richard A. Ciccone,* for defendant.