STATE

v.

**Roger Maurice BELCOURT.**

**No. 80–9–C.A.**

Supreme Court of Rhode Island.

Feb. 18, 1981.

Reargument Denied March 12, 1981.

Dennis J. Roberts II, Atty. Gen., David Leach, Asst. Atty. Gen., for plaintiff.

Paul E. Kelley, Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant from convictions on an information charging him with two counts of indecent assault in violation of G.L.1956 (1969 Reenactment) § 11–37–6[1] and two counts of committing an abominable and detestable crime against nature (fellatio) in violation of G.L.1956 (1969 Reenactment) § 11–10–1. The defendant was tried before a jury in the Superior Court and was found guilty on all charges.

Prior to trial, defendant filed and prosecuted a motion to suppress certain evidence the state planned to introduce at trial. This evidence included oral admissions made by defendant, a gold cross he was wearing when arrested, and a pair of undershorts displaying defendant's name. Additionally, defendant contended that evidence of a photographic identification should be excluded. After a hearing, the trial justice denied defendant's motion to suppress.

The record of the hearing on the motion to suppress discloses the following evidence. According to the testimony of Officer Larue (Larue) of the Woonsocket police department, at approximately 7:30 p. m. on October 2, 1978, he was on patrol near Woonsocket City Hall when he received a radio communication over his police walkie-talkie. The message came from the dispatcher at the police station and instructed Larue to pick up a person fitting the description of a white male, five feet eight to five feet ten inches tall, with a beard and dark hair, and wearing dark clothing and a cross and chain around his neck. Approximately thirty to thirty-five minutes later, Larue observed a person fitting this description crossing a bridge. Larue was able to recount that the suspect had on blue jeans, a dark-colored shirt, a beard and, as he approached the suspect, Larue saw a

chain around his neck. Larue stopped the suspect and frisked him for weapons. While doing this, the officer felt an object at the end of the chain, and apparently pulled the object from underneath the shirt, thereby revealing a cross. Thereupon, Larue placed defendant under arrest and gave him the *Miranda* warnings. Without further activity, defendant was placed in a police car and transported to the police station. Upon arrival, defendant was referred to Detective Jean Forest of the Juvenile Division, who was in charge of investigating two complaints of sexual assault.

According to police reports, two juveniles, accompanied by their parents, had come to the police station on October 2. The juveniles reported that they had been indecently assaulted earlier the same day and then gave Forest a description of the assailant including his physical appearance and wearing apparel. The children also recalled that the individual was wearing a chain and cross and had a word written on the waistband of his undershorts. At the suppression hearing, Detective Forest testified that the suspect brought in by Officer Larue looked and was dressed exactly as the children had described their assailant. At the station, defendant received *Miranda* warnings a second time. The defendant was asked to show the waistband of his shorts, and he agreed to comply with this request. Upon exposing his shorts, Forest was able to see the name "Belcourt" printed on the waistband. Later, defendant signed his name and filled in the blanks on a waiver form, but he refused to make any written statements. After initially denying his presence at the scene of the incident, however, defendant made some oral admissions concerning his role in the assault, although defendant stopped short of admitting he committed fellatio. Several days after the incident, a second investigator, Detective Sergeant Beauchemin, realized that a photo identification had not been made by the juveniles. Beauchemin subsequently contacted the children's parents and had them come in with the juveniles to make a photo-

1. General Laws 1956 (1969 Reenactment) § 11–37–6, as amended by P.L.1979, ch. 302, § 2.

graphic identification. The juveniles were shown the photographic display, and they picked out defendant. The picture of defendant used in the display was taken at the police station on the day of his arrest.

The issue on appeal is whether the initial stop and subsequent arrest by the officer was in violation of the Fourth Amendment standard of search and seizure, thus making the evidence obtained as a result of the arrest inadmissible.

The defendant strenuously contends that his motion to suppress should have been granted. According to defendant, the evidence obtained was a fruit of an illegal arrest because it was neither made with a warrant nor based upon probable cause. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Fourth Amendment of the United States Constitution provides that

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, section 6 of our Rhode Island Constitution is almost identical:

"The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched, and the persons or things to be seized."

■ The United States Supreme Court has held, however, that nothing in the Federal Constitution prohibits a police officer from arresting a suspect without a warrant "if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 349 (1979). By statute, police officers

in this state may make warrantless arrests under the same circumstances articulated by the *DeFillippo* Court. General Laws 1956 (1969 Reenactment) § 12–7–3, as amended by P.L.1977, ch. 71, § 1; G.L.1956 (1969 Reenactment) § 12–7–4. Thus, although probable cause is an absolute prerequisite to a valid arrest, a proper arrest can be made without a warrant. *See, e. g., United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824–25, 46 L.Ed.2d 598, 605 (1976); *Draper v. United States*, 358 U.S. 307, 310, 79 S.Ct. 329, 331, 3 L.Ed.2d 327, 330 (1959).

■ It becomes important, therefore, to restate the principles underlying the concept of probable cause because defendant was arrested without a warrant. "In dealing with probable cause * * * we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949). Probable cause to arrest depends "upon whether, at the moment the arrest was made * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); *accord, State v. Firth*, R.I., 418 A.2d 827, 829 (1980); *see Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925). Furthermore, establishing probable cause to make an arrest does not require the same degree of proof needed to determine guilt. *Draper v. United States*, 358 U.S. 307, 311–12, 79 S.Ct. 329, 332, 3 L.Ed.2d 327, 331 (1959).

■ In *State v. Duffy*, 112 R.I. 276, 308 A.2d 796 (1973), we held that the probable-cause inquiry may focus on the collective knowledge of the police department and is not limited to what the arresting officer knew. *Id.* at 280, 308 A.2d at 799. More-

over, "an arresting officer in the field [may] rely on departmental knowledge which [comes] to him through official channels." *State v. Soroka*, 112 R.I. 392, 395 n.1, 311 A.2d 45, 46 n.1 (1973) (construing *State v. Duffy*); *see State v. Smith*, R.I., 396 A.2d 110, 113 (1979). Consequently, whether information an arresting officer receives through police channels can serve as the basis for a warrantless arrest depends in part on whether the information is reasonably trustworthy. *See State v. Soroka*, 112 R.I. at 397, 311 A.2d at 47. In the instant case, the information transmitted by the radio dispatcher was based on statements given by the victims of the crime.

■ The record reveals that the arresting officer received information that an individual particularly described in regard to physical appearance and dress was to be "picked up" in connection with the assault. The defendant argues that the cross attached to the chain was not visible and that Larue was not aware of the exact time when, or place where, the crime was committed, and therefore probable cause did not exist. We disagree, however, and find the description of defendant was sufficient to sustain a finding of probable cause.

The defendant also complains that Larue's act of pulling out the cross while frisking defendant was not part of a legitimate weapons frisk. The state counters that this action was part of a lawful stop and frisk and that once the officer legally detained defendant and discovered the cross, probable cause existed to arrest defendant. In our opinion, neither contention accurately characterizes the legal basis upon which Larue detained, frisked, and ultimately arrested defendant.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court stated that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that [person]" within the meaning of the Fourth Amendment. *Id.* at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903; *see Davis v. Mississippi*, 394 U.S. 721, 726–27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676, 681 (1969). In the absence of probable cause, "stop and frisks" are proper only where the officer is "able to point to specific and articulable facts" rather than rely on mere hunches to support the warrantless intrusion. *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *see State v. Halstead*, R.I., 414 A.2d 1138, 1146 (1980). Subsequent to *Terry*, the Court has held that police may make a brief investigatory stop of a "suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information * * *." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972).

■ Under the circumstances of this case, however, we do not need to examine whether Larue's frisk squares with the *Terry* criteria or whether discovery of the cross afforded Larue the necessary probable cause to arrest the defendant. We reach this conclusion because we find that Larue possessed sufficient probable cause to arrest the defendant when Larue first saw him and realized he fit the description. Possessing sufficient cause to arrest him, Larue's search of the defendant and Larue's extraction of the cross were constitutionally permissible even though this object did not appear to be a dangerous weapon. *See Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348 (1979). The officer's act of arresting the defendant after frisking him does not change this result. When the seizure of a person is based upon probable cause and the officer obtains certain evidence as the result of a search that follows the seizure, the taking of the evidence is legal if the officer immediately effects an arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 110, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645–46 (1980). Because the initial seizure was premised on probable cause, the ensuing arrest was valid and all evidence derived from the arrest was legally admissible.

The defendant's appeal is denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superior Court.