**STATE**

**v.**

**James D. BENNETT.**

**No. 80–127–C.A.**

Supreme Court of Rhode Island.

June 4, 1981.

Reargument Denied July 9, 1981.

---

Dennis J. Roberts, II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for plaintiff.

Thomas Pearlman, Morton J. Marks, Providence, Alan E. Weinstein, Miami Beach, Fla., for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, James Bennett, from a conviction of unlawful possession of a controlled substance (marijuana), with intent to deliver in violation of G.L. 1956 (1968 Reenactment) § 21–28–4.-01(A)(1), as enacted by P.L. 1974, ch. 183, § 2.

Prior to trial, defendant filed a motion to suppress all evidence seized by the arresting officers, asserting that this evidence was the product of an illegal arrest. He also moved to dismiss the information on the ground that since § 21–28–4.01(A)(1) expressly excludes marijuana, he could not be convicted under this statute.[1] After hearing and considering these motions, the trial justice denied both of them. The case then proceeded to trial before a jury in the Superior Court. Upon completion of the trial, the jury returned a verdict of guilty and judgment was entered against defendant.

On August 14, 1977, at approximately 11 a. m. Detective Carnahan of the Warwick police department was at the Carlton House Motor Inn questioning the desk clerk about an unrelated crime the officer was investigating. During this conversation, the clerk informed Detective Carnahan that an employee of the inn had reported evidence of illegal activity taking place in room 249. The clerk related that a chambermaid claimed to have observed several people congregating in room 249. One of these people appeared to have been using a tourniquet and the chambermaid reported having seen what could have been a hypodermic needle and syringe on the bureau. She had also reported that the room had smelled of marijuana smoke. Detective Carnahan relayed this information to police headquarters. He then stationed himself in the front parking lot and commenced a general surveillance.

At approximately 1:30 p. m., Sergeant David and Detective Godbout arrived on the scene. They stationed themselves within view of room 249, which had not been visible from Detective Carnahan's vantage point. During this surveillance, the officers did not see or hear anything within room

---

1. Based on the facts and the information, the conclusion that defendant should have been charged with a violation of G.L. 1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L. 1974, ch. 183, § 2, seems apparent.

249. However, they did observe about four people enter the room, stay briefly, and then leave. None of these people carried anything into or out of room 249. They were neither followed nor questioned. Later, the officers observed an individual leaving room 140. He carried a brown paper bag into room 249 and left shortly thereafter without the bag.

At 2:15 p. m., or approximately three hours after the police had received their initial information, defendant and a companion drove through the parking lot of the motel and parked their automobile on a service road. Neither individual was known to the officers. The defendant left the automobile and walked through the motel grounds. He eventually entered room 249. The defendant then reemerged from the room with a brown paper bag and headed for his automobile. As defendant walked back through the parking lot, Sergeant David contacted Detective Godbout by radio, saying, "Let's stop him and check him out." The officers left their positions and followed defendant. They remained approximately fifteen to twenty feet behind him. Sergeant David yelled out, "Police, hold it. We want to talk to you." The defendant turned to observe the officers, during which time Detective Carnahan alighted from his unmarked vehicle and cut defendant off from his possible avenue of retreat to his automobile. At the same time, the paper bag that defendant was carrying dropped to the ground and partially opened. Detective Godbout was then able to see inside the bag and observe a portion of the contents. Detective Godbout concluded from his experience and training that the bag contained marijuana. The police then took the bag and its contents and seized defendant. The bag was placed in one of the unmarked police cars, and defendant was arrested and eventually taken to the police station. Soon after his arrest defendant was advised of his constitutional rights. He acknowledged that he understood his rights and asked the officers why they were after him in view of the fact that he was only "a little guy." Later, in a written statement, defendant related that

he had been paid $2,000 to come to Rhode Island to pick up a sample of marijuana and deliver it to New York. The defendant also admitted that he had received a telephone call to go to room 249 of the Carlton House and pick up the package. The parties stipulated that the substance found in the bag was marijuana.

The defendant raises several issues. However, we shall direct our attention to the following two questions: (1) whether the evidence seized by the police officer was inadmissible as the fruit of either a warrantless arrest, not based upon probable cause, or an unjustified stop, and (2) whether the brown paper bag was abandoned and thus outside the protection of the Fourth Amendment of the United States Constitution and art. I, sec. 6, of the Rhode Island Constitution. Our decision with regard to these issues will make it unnecessary for us to consider the other questions raised by defendant.

I

The Fourth Amendment to the Constitution of the United States provides that "no warrants shall issue, but upon probable cause * * *." The Fourth Amendment and its counterpart, art. I, sec. 6 of the Rhode Island Constitution both protect an individual's reasonable expectation of privacy. Therefore, before an officer can make a valid arrest or conduct a search, he must possess sufficient probable cause. We approach the probable-cause inquiry by making a practical analysis of the facts known to the arresting officer. This analysis emphasizes "considerations of everyday life on which reasonable and prudent men * * * act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949); *see* *State v. Belcourt*, R.I., 425 A.2d 1224, 1226 (1981). "[A]n arrest with or without a warrant [, however,] must stand upon firmer ground than mere suspicion." *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441, 450 (1963); *see* *State v. Roach*, 106 R.I. 280, 283–84, 259 A.2d 119, 122 (1969). An officer has proba-

ble cause to make an arrest when he personally knows or reliably has been informed of facts sufficient to justify a person of reasonable caution to believe not only that a crime has been committed but also that the person to be arrested has committed the crime. *In re John C. and James C.*, R.I., 425 A.2d 536, 538 (1981); *State v. Firth*, R.I., 418 A.2d 827, 829 (1980); *see Henry v. United States,* 361 U.S. 98, 103–04, 80 S.Ct. 168, 171–72, 4 L.Ed.2d 134, 139 (1959).

■ The record in the instant case indicates that the officers made no attempt to obtain a warrant. When an arrest is made without a warrant, the standard for measuring probable cause must be at least as stringent as when a warrant is obtained. *Wong Sun v. United States,* 371 U.S. at 479, 83 S.Ct. at 413, 9 L.Ed.2d at 450. Although there are many circumstances in which an arrest is made without a warrant, the United States Supreme Court has expressed a strong preference that arrests be made with warrants. *See, e. g., Katz v. United States,* 389 U.S. 347, 357–59, 88 S.Ct. 507, 514–15, 19 L.Ed.2d 576, 585–86 (1967); *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147 (1964); *Chapman v. United States,* 365 U.S. 610, 615, 81 S.Ct. 776, 779, 5 L.Ed.2d 828, 832 (1961).

■ In the instant case, the officers could not have made a lawful arrest based on the bare information available to them. The record reveals that a cleaning woman had suspicions and that these suspicions were conveyed to the clerk, who in turn related them to the police. Relying upon these suspicions, the officers placed the motor inn under surveillance for several hours and during this period saw nothing reaching the level of criminal activity. Other than observing several individuals leaving and entering room 249, the officers saw only the individual who entered the room with a brown paper bag and defendant, who exited with a similar bag. The defendant was never specifically identified as being involved in any criminal activity before his seizure. *See Cioci v. Santos,* 99 R.I. 308, 313, 207 A.2d 300, 303 (1965). Moreover,

the information given to the police was not sufficiently accurate to lead them directly to defendant. *Id.* at 312, 207 A.2d at 303. In our opinion, no valid warrant could have been issued on such evidence. We find that the officers acted on a mere suspicion of criminal activity that was not sufficient to establish "probable cause particularized with respect to [defendant]." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979).

■[3] Although we have determined that the police had no probable cause to make an arrest, we must also decide whether their suspicion was adequate to allow them to stop and question this defendant. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized that [person]' within the meaning of the Fourth Amendment." *State v. Belcourt,* R.I., 425 A.2d 1224, 1227 (1981) (quoting in part *Terry v. Ohio,* 392 U. S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968)). Police do not need probable cause to stop a suspect for questioning if unusual or suspicious activity leads an officer to conclude, in light of his experience, that the individual may be involved in criminal activity. Moreover, if the officer believes that the suspect is armed and dangerous the officer may conduct "a carefully limited search of the [suspect's] outer clothing * * * in an attempt to discover weapons which might be used [against him]." *Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1885, 20 L.Ed.2d at 911. Nonetheless, to demonstrate the lawfulness of their conduct, the officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. A reading of the record below clearly demonstrates that the activity being observed was not the type of conduct that was unusual or of such a suspicious nature that it would lead the officers to believe that defendant was either involved in criminal activity or armed and dangerous.

The evidence indicates that one of the officers ordered defendant to stop, and then

they confronted him in a manner that blocked all avenues of freedom. In essence, they had "seized" defendant within the *Terry* definition before viewing the contents of the bag and effecting the arrest. It is apparent that the officers had no reason to connect defendant with any criminal activity that would meet the *Terry* criteria. Accordingly, in failing to meet this standard, the initial seizure of defendant was unlawful and evidence derived from an illegal detention is to be excluded. *Wong Sun v. United States,* 371 U.S. at 484, 83 S.Ct. at 416, 9 L.Ed.2d at 453.

## II

 As an alternative argument, the prosecution submits that whether or not the officers possessed probable cause to make a seizure, defendant abandoned the paper bag and thus had no standing to object to the introduction of this evidence. Therefore, argues the state, the evidence was not obtained pursuant to a search, lawful or otherwise.

The defendant does not concede that he abandoned the bag. The defendant argues that the stipulation of proof and unchallenged testimony of the prosecution witness at trial showed the bag to be in defendant's possession until he dropped it. The defendant further contends that this fact and the fact that the seizure and arrest were unlawful counter any argument by the state that he voluntarily abandoned the bag. Thus, defendant submits that he does have standing to object to admission of this evidence.

The question of "[a]bandonment is an ultimate fact or conclusion based generally upon a combination of act and intent." *Friedman v. United States,* 347 F.2d 697, 704 (8th Cir. 1965); *accord, Parman v. United States,* 399 F.2d 559, 565 (D. C. Cir.), *cert. denied,* 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968); *see State v. Monteiro,* 108 R.I. 569, 573–74, 277 A.2d 739, 741–42 (1971). However, "[a]n abandonment must be made to appear affirmatively by the *party relying* on it, and an intention to abandon will not ordinarily be presumed * * *." *Friedman v. United States,* 347

F.2d at 704 (*quoting Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 435 (8th Cir. 1952)). Furthermore, although such property may be used for evidentiary purposes, it may not be used if the abandonment results from illegal police activity. *Commonwealth v. Jeffries,* 454 Pa. 320, 326, 311 A.2d 914, 918 (1973).

In considering the issue of abandonment, the Fifth Circuit Court has noted that several courts have considered similar situations "and have uniformly held that the initial illegality tainted the seizure of the evidence since the [alleged abandonment] was the direct consequence of the illegal [search]. In such a situation it cannot be said that there was a 'voluntary abandonment' of the evidence. The only courts that have allowed the seizure of evidence that was [abandoned] have emphasized that 'no improper or unlawful act was committed by any of the officers' * * *." *Fletcher v. Wainwright,* 399 F.2d 62, 64 (5th Cir. 1968).

In the case before us, the seizure of defendant was illegal because it was without a warrant and not based upon probable cause or other circumstances that would have validated any type of stop. In the present case, the unlawful action of the police in seizing the defendant caused him to drop the bag. *See Commonwealth v. Jeffries,* 454 Pa. at 326, 311 A.2d at 918. The dropping of the bag was not voluntary but rather forced by the actions of the officers. Because the evidence was procured as a result of an illegal arrest and seizure, it should be excluded. *Commonwealth v. Painten,* 368 F.2d 142, 144 (1st Cir. 1966); *Williams v. United States,* 237 F.2d 789, 789 (D. C. Cir. 1956).

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court.

SHEA, J., did not participate.