STATE

v.

Patrick **ALEXANDER.**

No. 80–99–C.A.

Supreme Court of Rhode Island.

Aug. 25, 1981.

**966**

Dennis J. Roberts, II, Atty. Gen., James P. Renaldo, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, Sheldon Yavitz, Miami, Fla., for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the state from an order of a justice of the Superior Court suppressing certain evidence obtained as a result of the warrantless search of a motel room rented by the defendant Patrick Alexander. This search took place after Alexander had been arrested in another room in the same building. We affirm. The facts pertinent to this appeal are as follows.

On August 14, 1977, a number of Warwick police officers were engaged in an investigation of possible narcotics activity at the Carlton House Motor Inn in the city of Warwick. During the course of a surveillance of the building, several persons were observed going to room 249 of the motel, remaining a few minutes, and then leaving. The police also observed a person later identified as Alexander leave room 140, carrying a brown paper bag. Alexander then entered room 249.

Approximately thirty minutes later, an automobile entered the motel grounds and parked on the north side of the building. The automobile contained a male driver and a female passenger. The operator left the vehicle and proceeded directly to room 249. Five minutes later the operator, later identified as James Bennett, reappeared, carrying a brown paper bag. Members of the surveillance team ordered Bennett to stop.

He discarded the bag and started to run. The bag was retrieved, and Bennett was apprehended. Inspection later determined that the bag contained marijuana. Incident to his apprehension, Bennett stated that he had been paid money in Florida to come to room 249, to pick up a sample of marijuana, and then to deliver it to someone in New York. Bennett also asserted with respect to individuals in room 249: "They're the ones you want; they're the big ones." Bennett was then removed from the immediate area.[1]

After removing Bennett from the area, the police checked with the desk clerk and found that rooms 140 and 249 were registered to individuals who were not residents of the state of Rhode Island. They then proceeded to room 249 and arrested the occupants who were later identified as Tracy Boyd, Frederick Porter and Patrick Alexander. At the time of the arrest the police noticed an open suitcase inside of which the handle of an automatic pistol was visible. An inspection of the suitcase produced two additional firearms. A search of the room disclosed that a brown paper bag similar to the one carried to room 249 by Alexander was not in the room. The police may have inferred from this discovery that the bag carried by Bennett was the same bag brought by Alexander to room 249. While the police were in room 249, two other persons, later identified as Jessie Sims and Deborah Carr, knocked on the door and asked for "Rick," whereupon the police promptly arrested these two as well.

Thereafter, members of the surveillance group went to room 140 where they found the door ajar. The police had, just prior to this action, noticed another unidentified person hurriedly departing from room 140. The police entered the room, determined that there were no additional people inside, and then proceeded to examine two suitcases that they found there. An odor of marijuana was detected, and one of the suitcases was found to contain approximately thirty pounds of marijuana.

---

1. The search of Bennett was later found to be constitutionally impermissible in *State v. Bennett*, R.I., 430 A.2d 424 (1981).

On these facts the trial justice determined that the warrantless entry of room 140 was constitutionally infirm, and therefore he suppressed evidence obtained in the search of that room. We agree.

■ Even assuming, as did the trial justice, that the police had probable cause to believe that the room might contain contraband, that probable cause could not form a basis for a warrantless entry. "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant." *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409, 413 (1970)(*quoting Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145, 149 (1925)). Nothing is more firmly established as a constitutional principle than the special protection afforded to dwelling places by the Fourth Amendment to the Constitution of the United States. Merely because officers may have probable cause to believe that a dwelling house contains contraband does not give officers permission to avoid the warrant requirement. *See Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

The search could not, of course, be supported as incident to the arrest of Alexander in a different room. In *Vale v. Louisiana, supra*, the defendant had been observed by police officers while he was engaged in a sale of narcotics. As a result of this observation, the officers arrested Vale upon the front steps of his home; and because they believed his house was the repository of additional narcotics, they proceeded to search it. As they anticipated, the officers found narcotics in a rear bedroom. Among other arguments, the state of Louisiana claimed that the search of the house might be supported by the arrest that took place in the immediate vicinity of the dwelling. The Supreme Court rejected this argument in the following terms:

"A search may be incident to an arrest 'only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest' * * *.

If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, cf. *Agnello v. United States*, 269 U.S. 20, 32 [46 S.Ct. 4, 6, 70 L.Ed. 145], not somewhere outside—whether two blocks away, *James v. Louisiana*, 382 U.S. 36 [86 S.Ct. 151, 15 L.Ed.2d 30]; *Shipley v. California*, [395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969)] or on the sidewalk near the front steps." *Id.* 399 U.S. at 33–34, 90 S.Ct. at 1971, 26 L.Ed.2d at 413. (Emphasis in original.)

In *Johnson v. United States, supra*, the officers entered a hotel room from which they could smell burning opium and about which they had had information from a confidential informer. The officers entered the room and arrested the single occupant thereof. In finding the entry and search constitutionally invalid, Mr. Justice Jackson observed:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officers engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." (Footnotes omitted.) *Id.* 333 U.S. at 13–14, 68 S.Ct. at 369, 92 L.Ed. at 440.

■ Assuming without deciding that the police could establish exigent circumstances sufficient to support a warrantless examination of the premises in order to determine that there were no persons within, we believe it to be clear that once the officers found no persons within the premises, the exigency permitting the warrantless entry would no longer exist. Even in the case of

an entry into the scene of a homicide, once the premises are secured and it is determined that no further danger exists, the exigency that gave rise to the limited right of entry has ceased to exist and the warrant requirement is reasserted. *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978).

Thus, in the case at bar, as soon as the police had satisfied themselves that there were no other persons in the room, there was no longer a basis upon which to support any further right to search the premises or its contents. Only a judicial officer could then authorize a search of the room for contraband. *See McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948); *Johnson v. United States, supra.* In view of our determination concerning the warrantless search of the dwelling place, there is no need to address the further question concerning the warrantless search of the two suitcases under doctrines recently enunciated in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and earlier in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Consequently, the trial justice was correct in suppressing the fruits of this warrantless search.

For the reasons heretofore stated, the appeal of the state is denied and dismissed, the order entered by the Superior Court is affirmed, and the papers in the case are remanded to the Superior Court for further proceedings consistent with this opinion.