### STATE

### v.

### Joel JENISON.

### STATE

### v.

### Michele CORY and Joel Jenison.

### Nos. 80–98–C.A., 80–100–C.A.

Supreme Court of Rhode Island.

March 12, 1982.

---

Dennis J. Roberts II, Atty. Gen., James P. Renaldo, Sp. Asst. Atty. Gen., for plaintiff.

Keven A. McKenna, Bruce Hodge, Providence, for defendants.

## OPINION

MURRAY, Justice.

We have consolidated two criminal cases for review. In Criminal Information No. 79–195, Joel Jenison (Jenison) is charged with carrying a pistol without a license in violation of G.L.1956 (1969 Reenactment) § 11–47–8(a), as amended by P.L.1975, ch. 278, § 1.[1] In Criminal Information No. 79–

---

1. General Laws 1956 (1969 Reenactment) § 11–47–8(a) in pertinent part provides:

"License or permit required for carrying pistol— * * * (a) No person shall, without a license or permit therefor * * * carry a pistol or revolver in any vehicle or conveyance or on or about his person whether visible or concealed, except in his dwelling house or place of business or on land possessed by him * * *. The provisions of the above section shall not apply to any person who is the holder of a valid license or permit issued by the licensing authority of another state, or territory of the United States, or political subdivision thereof, allowing him to carry a pistol or revolver in any vehicle or conveyance or on or about his person whether visible or concealed, provided said person is merely transporting said firearm through the state in a vehicle or other such conveyance without any intent on the part of said person to detain himself or remain within the state of Rhode Island. * * * Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one (1) nor more than five (5) years and except for a first conviction under this section shall not be afforded the provisions of suspension or deferment of sentence, nor a probation."

199, Jenison and Michele Cory (Cory) are charged with the unlawful possession with intent to deliver a controlled substance, cocaine, in violation of G.L.1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L.1974, ch. 183, § 2.[2]

The cases come before us on the appeals of the state, pursuant to G.L.1956 (1969 Reenactment) § 9–24–32, as amended by P.L.1972, ch. 169, § 10, from Superior Court orders granting motions to suppress evidence in each case. The defendants, in response to the state's appeals, have filed a number of cross-appeals. In their brief, defendants have presented numerous arguments in opposition to the state's appeals and in support of their eight cross-appeals. At this time we should note that this matter has been before this court on an earlier occasion. *State v. Jenison*, R.I., 405 A.2d 3 (1979). In that case, we found the indictments charging these two defendants to be constitutionally infirm because the grand jury indicting the defendants had not been drawn from a fair cross section of the community. *Id.* 405 A.2d at 10.

In the instant case, we shall deal with only one of defendants' cross-appeals, *viz,* whether the trial justice erred in denying Jenison's motion to dismiss information No. 79–199, charging him with constructive possession of cocaine, for lack of probable cause. The consideration of that single cross-appeal is all that is required to bring these actions to a conclusion.

We have considered the narcotics investigation of August 14, 1977, at the Carlton House Motor Inn (Carlton) on three previous occasions. *See State v. Porter*, R.I., 437 A.2d 1368 (1981); *State v. Alexander*, R.I., 433 A.2d 965 (1981); and *State v. Bennett*, R.I., 430 A.2d 424 (1981). In each of these three opinions we have developed many of the facts of the present appeals as they relate to the state and defendants. Those relevant facts of the instant appeals are here presented.

On August 14, 1977, at approximately 12:30 p. m., Detective Mackey Carnahan (Carnahan) of the Warwick police department, while investigating another crime, received information from a Carlton employee that drug paraphernalia had been seen in room number 249 by the employee. Carnahan was able to determine that room 249 was rented by a Frederick B. Porter III of Virginia; he also learned that Porter was accompanied by a male companion. Shortly thereafter, Detective Sergeant Kenneth David (David), and Detectives James Godbout (Godbout), Mark Tripp (Tripp), and Raymond Theisler (Theisler)[3] began surveillance of room 249. During the investigation, Sergeant David was informed that the occupants of room 249 had made or received between forty and fifty phone calls in a period of less than twenty-four hours. During a brief period of observation, several people were seen coming to and leaving from room 249. A person was noticed leaving room 140 and proceeding toward room 249; the individual left the door open behind him.

The police noticed a male suspect leaving room 249 carrying a brown paper bag and walking quickly. The police approached him and identified themselves. The individual, subsequently identified as James D. Bennett, dropped the bag and began to run. He was apprehended, and the bag, containing marijuana, was recovered. After receiving his rights, Bennett gave a verbal

2. General Laws 1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L.1974, ch. 183, § 2, provides:

"Prohibited acts A—Penalties.—(A) Except as authorized by this chapter, it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.

\* \* \* \* \* \*

(2) Any person, except as provided for in (1) of this subsection who [violates] this subsection with respect to:

(a) a controlled substance classified in schedule I or II is guilty of a crime and upon conviction may be imprisoned for not more than thirty (30) years, or fined not more than fifty thousand dollars ($50,000) or both."

3. Although Detective Robert Peasley, Officer Tripp's partner, may have been present initially, Officer Tripp testified he did not have any knowledge of Officer Peasley's being present for the arrest of Jenison and Cory.

statement to police in which he stated that he had received the marijuana from the people in room 249.

At this point, the police went to room 249 and knocked on the door. As the door was opened, a gun became visible to the detectives. The detectives proceeded to arrest the three occupants of the room: Tracy Boyd, Frederick Porter, and Patrick Alexander. As a result of the investigation of room 249, five suspects were taken into custody. Several guns were also seized.

The detectives then went directly to room 140; the door still being open, they proceeded into the room. The aroma of marijuana pervaded the motel room. A large plastic garbage bag was found in a suitcase, the contents of which, upon examination, were revealed to be marijuana. Shortly after their discovery, the detectives left room 140. They were standing outside the room for several minutes searching another vehicle, when a vehicle entered the Carlton parking lot.

The rented yellow Mercury Cougar stopped in a parking space below room 249. When the driver emerged, Officer Tripp recognized him as a former high school classmate. Officer Tripp stated to Officer Godbout and Sergeant David, "that looks like Joel Jenison." A female passenger, subsequently identified as Cory, was in the car with Jenison.

Immediately thereafter, Jenison emerged from the vehicle and began to walk toward the trunk. According to the detectives, Jenison opened the trunk and removed an object. He tucked the object, which the officers were unable to identify at that time, into his pants and placed his shirt over it. He closed the trunk. Jenison then proceeded to a stairwell not far from where the yellow Cougar was parked. The stairwell led to room 249. Jenison knocked on the door and started to say something; Officer Tripp was not exactly sure of what was said. After a minute or two, Jenison proceeded down the stairs and started to walk toward his vehicle.

At this point the accounts of the incident given by the detectives and by the civilian witnesses begin to differ. Officers Tripp and Godbout both testified that Jenison walked past the driver's side of the vehicle and toward the trunk. The detectives, with Officer Tripp leading, had begun to approach Jenison as he descended the stairwell. By the time Jenison reached the rear of the automobile, the detectives were only eight to fifteen feet away from him. When he opened the trunk and took the object out from under his shirt, Officer Tripp recognized it as a gun. He mentioned this to the others. Officer Tripp then hollered something that alerted Jenison that the police were in pursuit. Jenison had his hand on the trunk and appeared ready to shut it when Officer Tripp put his hand on it. Jenison was given his rights and told what he was being arrested for. The civilian witnesses, although their testimony was in no way consistent with one another's, testified that they did not see the trunk open after Jenison had returned from room 249 and prior to his formal arrest.

According to the police version of the incident, the detectives, while at the trunk effectuating Jenison's arrest, saw the automatic pistol resting in a partially open brown briefcase. Also contained in the briefcase was a substantial amount of American currency. When inventoried later by the police, the currency amounted to $51,000, of which Cory claimed $20,000 as her own. In addition, the trunk held two larger suitcases; one of the suitcases contained $100,000. After photographs were taken of the trunk and its contents, the briefcase and the trunk were then closed. The vehicle, with the luggage secured in the trunk, was driven to the police station.

While Jenison was being given his rights, Cory remained in the car. She was approached by Officer Tripp and asked to step out of the vehicle. When she obliged, Officer Tripp took possession of her pocketbook. Because the zipper on the top of the pocketbook was open, he had little problem peering into the pocketbook and making a cursory search for weapons. Finding none, he turned the pocketbook over to Sergeant David.

Subsequently, at the police station a thorough search of the pocketbook was made by Officer Tripp; the search was undertaken at the direction of Sergeant David. He was specifically looking for "narcotics, weapons, [and] money." The search uncovered approximately six ounces of cocaine.

Additional facts will be discussed as necessary in the resolution of the issues.

### I

■ Initially, we consider the charge that Jenison was carrying a pistol without a license. After listening to testimony at the hearing on the motion to suppress the evidence taken from the trunk of the Mercury Cougar, the trial justice gave a detailed bench decision. He carefully reviewed the testimony of each witness. Since the police had not obtained a search warrant, the trial justice correctly viewed his duty as one in which he was required to determine if the state had proven by clear and convincing evidence that the search was justified under one of the exceptions to the warrant requirement. Relying primarily upon the testimony of the state's rebuttal witness, Pamela Trottier (Trottier), and the fact that he did not believe the detectives' version of the incident, the trial justice found that the state had not sustained its burden. He, therefore, suppressed the evidence taken from the trunk of Jenison's vehicle.[4]

The state argues that the trial justice's decision to suppress the evidence found in the trunk was clearly erroneous. Essentially, the state contends that we must assume that the seizure of the evidence occurred according to the testimony of the detectives. The state bases this argument upon the fact that the witnesses called by the defense made inconsistent and contradictory statements and that the trial justice overlooked or misconceived portions of the crucial Trottier testimony. The state proceeds to contend that if we assume the facts are as stated by the detectives and accept the trial justice's conclusion that probable cause existed to arrest Jenison, then the search can be justified either as incident to a lawful arrest or under the exigent-circumstances exception to the warrant requirement.

We do not agree with the argument of the state. Although we agree that the witnesses presented by the defense were either plainly contradictory of one another or simply inconsequential, the state is not aided by this observation. The trial justice also was fully aware of the problems presented by the testimony, and he duly acknowledged his awareness by stating that "it appear[ed] that each witness called by the defense contradicted the prior [defense] witness." He then proceeded to review the testimony of each defense witness, often emphasizing the contradictions that existed in the record. But he also mentioned the fact that although the defense witnesses contradicted one another "to some degree," they all contradicted the police version. The testimony of the defense witnesses is insignificant, and we only mention the contradictions in their testimony because the issue was raised by the state.

4. Although it does not alter our final determination, we are not in agreement with the trial justice's statement that probable cause existed to arrest Jenison. Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime. *State v. Bennett*, R.I., 430 A.2d 424, 426–27 (1981); *In re John C.*, R.I., 425 A.2d 536, 538, *cert. denied*, 453 U.S. 1005, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). Facts that become known to the police subsequent to an arrest are irrelevant to the probable-cause determination. *Id.; State v. Frazier*, R.I., 421 A.2d 546, 549 (1980). In the present case, the only facts the detectives had knowledge of that would have even suggested illegal conduct were that Jenison had placed an unidentifiable object under his shirt, that he had knocked on the door of a room where previous illegal activity had occurred, that he had shouted something unintelligible while at the door, and that he was walking rapidly along the driver's side of the vehicle. We are of the opinion that these facts only established a mere suspicion of criminal involvement; they were insufficient to establish the existence of probable cause to arrest Jenison. *See State v. Firth*, R.I., 418 A.2d 827, 829 (1980).

The testimony of the state's rebuttal witness, Trottier, is crucial to the issue before this court. She was the last witness to testify at the lengthy suppression hearing, and her testimony was critical to the trial justice's determination.

Before we analyze Trottier's testimony, it is essential that we set forth the standard of review in ruling on a motion to suppress. When the defendant's constitutional rights are involved, we must make an independent examination of the facts, the findings, and the record to determine if his rights have been violated. *State v. Sundel*, R.I., 402 A.2d 585, 589 (1979); *State v. Smith*, R.I., 396 A.2d 110, 113 (1979). Of course, we still give deference to the findings of fact of the trial justice. *State v. Cline*, R.I., 405 A.2d 1192, 1196 (1979). And we adhere to the rule that in reviewing a trial justice's decision on a motion to suppress, we shall not overturn his findings unless they are clearly erroneous. *Id.; State v. Leavitt*, 103 R.I. 273, 289–91, 237 A.2d 309, 318–19, *cert. denied*, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968).

The state contends that the trial justice both overlooked and misconceived crucial portions of Trottier's testimony. The state's major argument is that her testimony was in fact consistent with the detectives' version of the arrest and not inconsistent with that version as the trial justice obviously had concluded.

The crucial portion of Trottier's testimony begins with Jenison's returning to the Mercury Cougar from room 249. Her recollection was that Jenison walked along the driver's side of the vehicle toward the rear and that he did not turn at the door as if to enter the vehicle. She admitted that when Jenison was at the rear part of the door and heading toward the trunk, she diverted her eyes while answering a phone call. She stated that at the time she took her eyes off the subject, the trunk was still closed. The state contends that this testimony is consistent with its version. According to the detectives' testimony, while Jenison was walking along the side of the vehicle, the trunk was closed.

Unfortunately, counsel for the state has overlooked the trial justice's questioning of Trottier at the close of her appearance on the stand. After establishing that Trottier had seen four officers approach Jenison at the car door, the following exchange occurred between the court and the witness:

"THE COURT: And were these four men who had left Room 140, or wherever they came from, were they visible to [Jenison] to your knowledge? Were they in his direct view?

"MISS TROTTIER: There was no obstruction. He could see them, but I don't recall his looking in that direction. When I turned around, I heard them say, 'Warwick Police'.

"THE COURT: You heard them say, 'Warwick Police'?

"MISS TROTTIER: Yes.

"THE COURT: At that point, where was the Defendant Jenison?

"MISS TROTTIER: Probably one stride past the driver's door. I would have to extrapolate on his movement at that moment.

"THE COURT: At that point, was the trunk opened?

"MISS TROTTIER: No, it was not.

"THE COURT: Thank you very much. You may step down.

You don't have any questions, do you, Mr. McKenna?

"MR. McKENNA: No. Thank you.

"THE COURT: Two o'clock. Any further witnesses, Mr. Renaldo?

"MR. RENALDO: Nothing further, Your Honor.

"THE COURT: Mr. McKenna, any further witnesses?

"MR. McKENNA: No, your Honor.

"THE COURT: 2 p. m. with arguments."

The trial justice obviously believed Trottier's version of the arrest and did not believe the detectives' version. It was reasonable to infer that at the time Trottier heard the words "Warwick Police," Jenison was a step beyond the driver's-side door with the trunk still closed. The detectives'

version, on the contrary, places Jenison at the open trunk when he was made aware of their pursuit. The trial justice in his decision specifically stated that he did "not believe the police witnesses were telling the truth as to how the arrest was made and how the trunk came to be opened." The assessment of the credibility of testimony is within the province of the trial justice and not the task of this court. *State v. Zangrilli*, 440 A.2d 710, 711 (R.I. 1982). We, therefore, do not find, as the state would have us, that the trial justice misconceived Trottier's testimony concerning Jenison's arrest.

We quickly dispose of the other alleged error of the trial justice relating to Trottier's testimony. The state contends that because the trial justice in his bench decision incorrectly stated, when reviewing Trottier's testimony, that she had seen Jenison sitting inside his vehicle at the time of arrest, the trial justice must have misunderstood her testimony. We do not agree. The decision reveals that the trial justice quickly recognized his error and immediately corrected his mistake in the next sentence. The relevant portion of the decision clearly discloses the trial justice's awareness of the error and the subsequent rectification that occurred.

"[Trottier] saw the Defendant Jenison in the car when he was arrested. She heard the police say to Jenison something to the effect 'Warwick Police!' when Jenison was at the car door, *not in the car but at the car door*." (Emphasis added.)

■ In conclusion, we are of the opinion that the trial justice fully understood and appreciated the testimony of the witnesses at the suppression hearing. The fact that he chose to find one witness credible and not others is a determination that is solely within his province. We, therefore, conclude that the trial justice did not clearly

err in suppressing the evidence taken from the trunk of Jenison's vehicle.

## II

We shall now consider the charge that Cory had possession of a controlled substance with intent to deliver. As previously mentioned, Cory's pocketbook contained six ounces of cocaine.

In his bench decision the trial justice ordered that the cocaine seized from Cory's pocketbook be suppressed.[5] He found that the detectives should have obtained a search warrant prior to the second search of the pocketbook at the police station. The trial justice's rationale was that the exigent circumstances that may have existed earlier at the Carlton had dissipated when the pocketbook was safely under police control.

The state, relying primarily upon *United States v. Grill*, 484 F.2d 990 (5th Cir. 1973), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974), argues that the search of the pocketbook at the police station was permissible under the so-called second glance doctrine. Once Officer Tripp took his unobjectionable view at the Carlton, the police were entitled to take another look at the pocketbook because Cory's privacy interest had terminated after the initial search.

Unfortunately for the state, we are of the opinion that the state should not have taken a first glance. We, unlike the trial justice, do not find that the first search of the pocketbook was permissible as incidental to a valid arrest.[6] We make this determination because we do not find that probable cause existed to arrest Cory.

■ Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has

5. Although the order applies to the possession counts against both defendants, for reasons that later will become apparent, we shall consider the order as it relates to each defendant individually.

6. In his decision on Jenison's motion to suppress the contents of the trunk in No. 79–195, the trial justice evidently reversed himself and stated that there was no probable cause to arrest Cory at the time the gun was seized. Since we consider the trial justice's decision to suppress the contents of Cory's pocketbook here, we shall review his original finding that the police had "the fullest measure of probable cause to arrest * * * Cory."

reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime. *State v. Bennett,* R.I., 430 A.2d 424, 426–27 (1981); *In re John C.,* R.I., 425 A.2d 536, 538, *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). Facts that become known to the police subsequent to an arrest are irrelevant to the probable-cause determination. *Id.; State v. Frazier,* R.I., 421 A.2d 546, 549 (1980). When applying the probable-cause standard, a "seizure of [the] person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979).

At the time Officer Tripp approached Cory and asked her "to step out of the car," she was merely an individual situated at the site where narcotics activity had taken place earlier in the afternoon. She was also the female passenger in a car driven by Joel Jenison, a person suspected of criminal activity. These facts, the only ones known to police at the time of Cory's arrest, do not establish probable cause. The fact that an individual is in the presence of or associating with others who are suspected of criminal activity does not, by itself, establish probable cause to arrest such person. *Id.* at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245–46; *Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934–35 (1968); *State v. Firth,* R.I., 418 A.2d 827, 829 (1980).

In conclusion, we are of the opinion that Cory's mere presence in Jenison's car was insufficient to establish the existence of probable cause for her arrest. The search of Cory's pocketbook at the Carlton, therefore, was not a permissible search incident to a valid arrest. The trial justice did not clearly err in suppressing the evidence taken from Cory's pocketbook as it relates to the charge against her for possession of cocaine with intent to deliver.

### III

Finally, we consider the charge that Jenison had possession of a controlled substance with intent to deliver. Jenison is charged with constructive possession of the cocaine found in Cory's pocketbook. In his bench decision, the trial justice ordered that the cocaine be suppressed as it related to Jenison and Cory.

We are not in agreement with the trial justice's decision to suppress the evidence as it related to Jenison. The recent United States Supreme Court cases of *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), make clear that a defendant must have a legitimate expectation of privacy in an object before he can contest the legality of a search of that object. In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the companion case to *Salvucci, supra,* the petitioner attempted to suppress the introduction of certain illegal drugs, admittedly his own, taken from a female acquaintance's purse. The Supreme Court upheld a lower court finding that the defendant in *Rawlings* had no legitimate expectation of privacy in the purse and therefore could not challenge the legality of the search. *Id.* at 104, 100 S.Ct. at 2561, 65 L.Ed.2d at 641. Likewise, in the present case the facts of the search being substantially similar to those in the *Rawlings* case (except that Jenison, unlike the defendant in *Rawlings,* had not admitted ownership of the narcotics) and the record being devoid of any additional facts that warrant a finding that Jenison had a legitimate expectation of privacy in the contents of Cory's pocketbook, we conclude that Jenison could not contest the validity of the search. The trial justice's decision, therefore, to suppress the contents of Cory's pocketbook as it related to the charge against Jenison was clearly erroneous.

Since we have decided that the trial justice should not have suppressed the cocaine as it related to Jenison, we now address defendants' cross-appeal that will dispose of this charge against Jenison.

Jenison, pursuant to G.L. 1956 (1969 Re-enactment) § 12–12–1.7,[7] as enacted by P.L. 1974, ch. 118, § 11, brought a motion to dismiss information No. 79–199, which charged him with possession of a controlled substance with intent to deliver. The trial justice, viewing the exhibits contained in the information packet in a light most favorable to the state, denied Jenison's motion.[8] We are of the opinion that Jenison's motion should have been granted.

 Under our statutory framework, the trial justice's duty was to examine the information and the attached exhibits to determine "whether there exists probable cause to believe that the offense charged ha[d] been committed and that [the] defendant [had] committed it." Section 12–12–1.9, as enacted by P.L. 1974, ch. 118, § 11. The probable-cause standard to be applied "is the same as that for arrest." (Footnote omitted.) *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54, 69 (1975).

 Although we apply the "clearly erroneous" standard of review to a trial justice's decision on a motion to dismiss an information for lack of probable cause, *State v. Ouimette*, R.I., 415 A.2d 1052, 1053 (1980), we are required to make an independent examination of the record when there is a possibility that the defendant's constitutional rights have been violated. *State v. Sundel*, R.I., 402 A.2d 585, 589 (1979); *State v. Smith*, R.I., 396 A.2d 110, 113 (1979).

 In Rhode Island the possession of a controlled substance requires the "intentional control of [the] designated [substance] with knowledge of its nature." *State v. Gilman*, 110 R.I. 207, 215, 291 A.2d 425, 430 (1972). Possession of an object can be either actual or constructive. Constructive possession of an object occurs when an individual exercises dominion and control over such object even though it is not within his immediate physical possession. *In re Caldarone*, 115 R.I. 316, 326, 345 A.2d 871, 876 (1975); *State v. Motyka*, 111 R.I. 38, 40–41, 298 A.2d 793, 794 (1973). Proof of constructive possession of a controlled substance requires a showing that defendant knew of the presence of the substance and that he intended to exercise control over it; these two elements can be inferred from a totality of the circumstances. *In re Caldarone*, 115 R.I. at 329, 345 A.2d at 878 (Kelleher, J., dissenting).

We now address the issue that was properly before the trial justice at the probable-cause hearing, namely, whether or not there are sufficient facts and circumstances contained in the information packet which would lead a reasonable person to believe that Jenison had constructive possession of the cocaine in Cory's pocketbook with intent to deliver such cocaine.

 Although the exhibits reveal that Jenison had had an association with illegal drug trafficking and that there was definitely narcotic-related activity at the Carlton on August 14, 1977, we are not of the opinion that these facts indicate that Jenison knew of the existence of the cocaine in Cory's purse. The only fact a trial justice could have possibly based his finding of probable cause upon is the fact that Cory, Jenison's companion, was a passenger in a car driven by him at the time the cocaine was seized. It is not permissible to rely solely upon defendant's mere presence and association with another for a finding of probable cause to believe that defendant has committed an offense. Of course, we are well aware that in ruling on a motion to

---

7. Section 12–12–1.7 provides as follows:
 "Motion to dismiss information.—Within ten (10) days after a defendant is served with a copy of an information charging him with an offense he may move in the superior court to dismiss the information on the ground that the information and exhibits appended thereto do not demonstrate the existence of probable cause to believe that the offense charged has been committed or that he committed it. Upon the filing of the motion to dismiss the court shall schedule a hearing to be held within a reasonable time."

8. Although a reading of the transcript in No. 79–199 and of the criminal case fact sheet clearly indicates that the trial justice denied the motion to dismiss, no order has been entered in the Superior Court file.

dismiss an information, the trial justice is to allow the state "the benefit of every reasonable inference." *See* Explanation of ch. 118 (the information-charging legislation), P.L. 1974, ch. 118 at 702. But to draw an inference of constructive possession solely from an individual's mere presence at a site where narcotics are found is "conjectural and speculative" and not "reasonable and rational." *In re Caldarone*, 115 R.I. at 326–27, 345 A.2d at 876; *State v. Fortes*, 110 R.I. 406, 409, 293 A.2d 506, 508 (1972).[9]

▮ We are of the opinion that the information charging Jenison with constructive possession with intent to deliver should have been dismissed. The trial justice's denial of Jenison's motion to dismiss, therefore, was clearly erroneous.

In respect to the search that produced the pistol, the state's appeal is denied and dismissed. In respect to the charge of possession of cocaine, the state's appeal is denied and dismissed regarding Cory. Although Jenison had no standing to object to the search of Cory's pocketbook, his cross-appeal challenging the denial of his motion to dismiss the information in regard to him is sustained. The defendants' other cross-appeals are deemed to be waived, and both cases are remanded to the Superior Court for further proceedings consistent with this opinion.

---

**9.** When questioned on this issue at oral argument before us, the attorney for the state mentioned that the information packet included a statement by a police officer, expert in narcotic investigations, that in the officer's opinion the female companion usually carries the drugs for the male. We have thoroughly reviewed the information packet in No. 79–199. We are unable to locate the officer's statement.