**In re JOHN N.**

**No. 81–532–Appeal.**

Supreme Court of Rhode Island.

July 20, 1983.

James P. Marusak, Hinckley & Allen, Providence, for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

OPINION

MURRAY, Justice.

This is an appeal by the defendant, John N., a juvenile adjudged delinquent by the Family Court for possession of marijuana. John N. appeals the denial of his motion to suppress tangible evidence. He contends that a bag containing marijuana was seized from him pursuant to an unlawful search incident to an arrest made without probable cause. We agree and reverse the adjudication of delinquency.

The facts relevant to John's motion to suppress were elicited from Sergeant Peter Ashman of the Barrington police department. Sergeant Ashman testified that on the morning of April 19, 1981, he and other police officers on duty had been notified at roll call to be on the lookout for a car

bearing Massachusetts registration number 2B6200. The roll-call information indicated that the driver of the car, Anthony Eddins, was harboring a wanted man, Robert Vaness, who habitually wore a cowboy hat. At approximately 11:45 a.m., Officer Motta of the Barrington police spotted the vehicle in question, parked unattended in a no-parking zone. Officer Motta watched the car until 12:05 p.m. when Sergeant Ashman took over the surveillance. At 12:40 p.m. he saw three males, one wearing a cowboy hat, enter the car and drive away at a moderate speed. Sergeant Ashman followed the car for a short distance and then activated his cruiser's lights and siren. The car slowed, turned into a shopping plaza, and then stopped.[1]

Sergeant Ashman approached the vehicle and demanded the driver's license and registration. The driver, Anthony Eddins, produced his license but had difficulty locating his registration. Ashman asked Eddins to alight from the car, and as he did so, Ashman noticed an unconcealed sheath knife on Eddins's hip. Ashman thereupon arrested Eddins, searched him, and seized two glassine bags later determined to contain marijuana, three marijuana cigarettes, and a pipe.

Sergeant Ashman then ordered both teenage passengers out of the car and proceeded to arrest and search each of them.[2] He found eighteen marijuana cigarettes in one juvenile's pocket and a glassine bag later determined to contain marijuana in John's shirt pocket. The officer then transported Eddins and the youths to the police station.

After hearing the evidence on the motion to suppress, the trial justice concluded that the police officer had probable cause to arrest John and to search him incident to that arrest. He based his ruling on the

"totality of the circumstances." This included the roll-call information that was substantiated when officers sighted the specified automobile whose driver happened to be wearing a cowboy hat, the evasive movement of the car,[3] the identification of the driver, his arrest and the discovery of marijuana on him and the other passenger, and the fact that Officer Ashman recognized John.

■ On appeal, John contends that his Fourth Amendment rights were violated, both by the investigatory stop of the vehicle in which he was riding and by the subsequent arrest and search of his person. When a defendant alleges a violation of his constitutional rights, we must make an independent examination of the record to determine if his rights have been violated. *In re Armand,* R.I., 454 A.2d 1216, 1218 (1983); *State v. Jenison,* R.I., 442 A.2d 866, 872 (1982). In reviewing a trial justice's decision on a motion to suppress, we give deference to the findings of the trial justice and shall not overturn his findings unless they are clearly erroneous. *In re Armand* and *State v. Jenison,* both *supra.* For the reasons that follow we find that there was sufficient basis for the police officers to stop the automobile. However, based on our review of the record, our conclusion is that the trial justice erred in his determination that probable cause existed to arrest John. Therefore, the marijuana seized from his pocket was the fruit of an illegal search and should have been suppressed.

■ An investigatory stop differs from a full arrest and search both in the duration of the detention and in the quantum of suspicion necessary to conduct it. *State v. Halstead,* R.I., 414 A.2d 1138, 1145 (1980). The legal standard for determining the constitutional validity of an investigatory stop

---

1. Sergeant Ashman characterized the car's movements as "evasive." The trial justice, however, granted defense counsel's motion to strike this testimony.

2. Sergeant Ashman testified that he knew both teenagers but never indicated how he knew them. He also testified that at the time of the

stop the youths were glassy-eyed and lackadaisical in attitude.

3. Despite the fact that this testimony was stricken, the trial justice explicitly relied upon it in his decision on the motion to suppress.

has evolved since it was first enunciated by the Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer may conduct an investigatory stop solely on the basis of a reasonable suspicion of criminal activity, provided that the suspicion is based on specific and articulable facts and reasonable inferences that can be drawn therefrom. *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362–63 (1979); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979); *United States v. Brignoni-Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616 (1975). *See State v. Bennett,* R.I., 430 A.2d 424, 427 (1981); *State v. Halstead,* R.I., 414 A.2d 1138, 1146–47 (1980).

The Supreme Court has recently provided some guidance for determining whether or not a police officer's suspicions are sufficiently reasonable to justify an investigatory stop. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). *Cortez* requires that "the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629. The Court proceeds to elucidate a two-pronged test it calls a "particularized suspicion" for determining whether the stop is permissible. First, the assessment must be based upon all the circumstances, including objective observations, information from police reports, and consideration of the patterns of operation of certain kinds of lawbreakers. From this data, a trained officer may draw inferences based upon his knowledge and experience. Second, this process must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. *Id.*

This court recently utilized a *Cortez* analysis in *State v. DeMasi,* R.I., 448 A.2d 1210 (1982). We think such an analysis is particularly applicable in the case before us. The state maintains that under a "totality of the circumstances" analysis, this investigatory stop was valid. We agree.

Officer Ashman testified that he received police department roll-call information indicating that Anthony Eddins, the owner of a car bearing a particular Massachusetts registration, was believed to be harboring a wanted man who was known to wear cowboy hats. The officer spotted the vehicle in question and placed it under surveillance until the driver returned. He noted that the driver wore a cowboy hat. At that point, relying upon the departmental information and his own personal observations, he was justified in stopping the vehicle to request the driver's identification and registration and to investigate the whereabouts of the "wanted man."

The defendant challenges the officer's reliance upon departmental information in effecting this stop, maintaining that the roll-call information was unsubstantiated hearsay. This court has held that police may rely on hearsay information to establish probable cause to arrest as long as there exists a substantial basis for relying upon such information. *State v. Burns,* R.I., 431 A.2d 1199, 1204 (1981). It must be "reasonably trustworthy." *State v. Belcourt,* R.I., 425 A.2d 1224, 1227 (1981). Furthermore, an arresting officer in the field may rely upon the collective information available to the law-enforcement organization as a whole which is transmitted to him through official channels. *State v. Firth,* R.I., 418 A.2d 827, 829 (1980); *State v. Smith,* 121 R.I. 138, 141, 396 A.2d 110, 113 (1979); *State v. Duffy,* 112 R.I. 276, 280, 308 A.2d 796, 799 (1973). We think that in the instant case the police officer had sufficient information to form a reasonable and particularized suspicion justifying an investigatory stop. He had received departmental information regarding a specific criminal act, which was partially substantiated by his own observations. He was entitled to investigate further to determine the identity of the driver and the whereabouts of the "wanted man."

■ The problem arises in this case, however, with the arrest and search of John. It is axiomatic that the legality of an arrest is determined by the existence of probable cause at the time of the arrest and not by what a subsequent search may disclose. *State v. Jenison*, R.I., 442 A.2d 866, 874 (1982); *State v. Firth*, R.I., 418 A.2d 827, 829 (1980). Probable cause to arrest exists when facts and circumstances that a police officer personally knows or of which he has reasonably trustworthy information are sufficient to justify a reasonable belief not only that a crime has been committed but also that the person to be arrested has committed the crime. *State v. Jenison*, R.I., 442 A.2d at 873–74; *State v. Bennett*, R.I., 430 at 427; *State v. Belcourt*, R.I., 425 A.2d at 1226. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964).

■ However, when applying the probable-cause standard, "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979). The mere fact that a person is associating with, or in the presence of, others who are suspected of criminal activity does not, by itself, establish probable cause to arrest or search that person. *Id. Sibron v. New York*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934 (1968). *See United States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210, 216 (1948) (by mere presence in a suspected automobile, an individual does not lose immunity from search of his person to which he is entitled). *See also State v. Jenison*, R.I., 442 A.2d at 874; *State v. Firth*, R.I., 418 A.2d at 829.

■ That is precisely the situation before us. Sergeant Ashman had received roll-call information regarding the car and its driver. He made a legitimate investigatory stop of the vehicle and requested the driver's license and registration. When he discovered the driver had a knife, he made a valid arrest based upon known criminal activity. However, the fact that the subsequent searches of the driver and the other juvenile passenger produced marijuana did not provide the requisite probable cause to arrest and search defendant. The police officer had no independent information upon which to base a reasonable belief that John was engaged in criminal activity. The trial justice dismissed the officer's assertion that he was searching for weapons. The officer's only observation regarding John was that he appeared "glassy-eyed and lackadaisical." This observation alone is simply not sufficient to establish probable cause to arrest and search John.

For the reasons stated, we hold that the trial justice erred in denying John's motion to suppress the marijuana seized from him. Therefore, the defendant's appeal is sustained, the adjudication of delinquency is reversed, and the papers of the case are remanded to the Family Court.

KELLEHER, J., did not participate.