[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on defendant Louis Botelho's motion to dismiss both counts of the criminal information pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure. The defendant alleges that the State has failed to set forth sufficient probable cause in the information packet to support the charges.
When ruling on a motion to dismiss, the probable cause standard that is to be applied is the same standard as that for an arrest. State v. Jenison, 442 A.2d 866, 875 (R.I. 1982). The standard for the Court, therefore, is to examine the facts and circumstances of which he or she has reasonably trustworthy information and determine whether or not such evidence would warrant a reasonable person's belief that an offense was committed and that the person arrested has committed the offense.State v. Brennan, 526 A.2d 483 (R.I. 1987). Accordingly, it is this Court's duty to examine "the information and exhibits appended thereto, . . . [and determine] whether there exists probable cause to believe that the offense charged has been committed and that [the] defendant committed it." G.L. 1956 (1974 Reenactment) § 12-12-1.9.
COUNT 1
Count 1 of the criminal information charges that the defendant "did verbally threaten to murder, Master John J. O'Brien, a public official, in violation of § 11-42-4 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1981)." The defendant contends that Count 1 should be dismissed for two reasons. First, the defendant argues that the State failed to aver all the elements as required in § 11-42-4. Specifically, the State did not aver that the threat made to General Master O'Brien was "as a result of the lawful performance of his official duties." G.L. 1956 (1984 Reenactment) § 11-42-4.
"The technical precision of the common law rule of criminal pleading that required that a complaint set forth specifically everything that was necessary for the government to prove to establish the offense charged is no longer required." State v.Waite, 484 A.2d 887, 890 (R.I. 1984) (citing State v. Murphy,15 R.I. 543, 546, 10 A. 585, 587 (1887)). Rather, § 12-12-1.4 as well as Rule 7 of the Rules of Criminal Procedure for the Superior Court provide that:
 An indictment, information or complaint shall be a plain, concise and definite written statement of the offense charged. An indictment, information or complaint which provides the defendant and the court with adequate notice of the offense being charged shall be sufficient if the offense is charged either (a) by using the name given to the offense in terms of either the common law or by statute or (b) by stating the definition of the offense in terms of substantially the same meaning.
G.L. 1956 (1974 Reenactment) § 12-12-1.4.
The criminal information in question charges the defendant by using the name given to the offense and by specifically referring to the statute. This Court is fully satisfied that Count 1 provides the defendant and Court with adequate detail of the charges made against him.
The defendant further argues that Count 1 should be dismissed on the ground that Master O'Brien does not fall within the definition of public official contained in the statute. G.L. 1956 (1985 Reenactment) § 11-42-4 provides that public official "shall mean judges and elected officials of federal, state and local government". The defendant maintains that Master O'Brien is not a judge within the meaning of the statute and therefore does not fall within the class of persons the statute is intended to protect.
The general master of the Family Court was created by the legislature by § 8-10-3.2 of the General Laws. As in all judicial positions the general master is appointed by the Governor with the advice and consent of the Senate. He or she shall be appointed for a life term. While the statute sets forth the primary function of the general master to be the enforcement of child support decrees and orders relative to child support, it also authorizes the Chief Justice of the Rhode Island Supreme Court to assign the general master to perform judicial duties within any court of the state. As such the general master is vested with the same judicial authority as a judge.
It is well settled that "if a mechanical application of a statutory definition produces an absurd result or defeats its legislative intent [the] court will look beyond mere semantics and give effect to the purpose of the act." Labbadia v. R.I.,513 A.2d 18, 22 (R.I. 1986) (quoting State v. DeLaurier,488 A.2d 688, 693 (R.I. 1985)); see also City of Warwick v. Aptt,497 A.2d 721, 724 (R.I. 1985).
The language of § 11-42-4 clearly indicates a legislative intention to protect all judicial officers meaning all persons who are vested with the authority to decide causes or exercise powers appropriate to a court. The general master of the Family Court, though not given the title of "judge" is certainly clothed with judicial authority and performs significant judicial duties. The facts set forth in the information package indicate that the charges arose because Master O'Brien removed the defendant's son from the defendant's custody because of his continual abuse of the judicial system. Further, there are no less than thirteen (13) matters in the Rhode Island Family Court involving this defendant, many of which are the direct responsibility of Master O'Brien. Accordingly, Master O'Brien is a "judge" within the meaning of § 11-42-2.
COUNT 2
Count 2 of the criminal information charges that the defendant "did maliciously and by a threatening communication, endeavor to influence, intimidate and impede Judge John J. O'Brien, a General Master of the Rhode Island Family Court, in the discharge of his duty, in violation of § 11-32-3 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1981)." The defendant argues that Count 2 should be dismissed because there is nothing in the information packet to indicate that the defendant "by a threatening communication . . . endeavored to influence, intimidate and impede Judge John J. O'Brien in the discharge of his duties."
This argument is without merit. The information packet contains a statement from the defendant's ex-brother in law, Gordon Taylor. Mr. Taylor states that during a telephone conversation between himself and the defendant, the defendant said "tell Judge O'Brien I'm going to get a gun and blow away his wife, too." The criminal information packet also contains a tape recording of the above-described conversation. Additionally, the criminal information contains a letter from the defendant's son, Louis Botelho, Jr., to